1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

4

5

6

7

8

9

THE UNITED STATES OF AMERICA,

Plaintiff,

vs.

VICTOR PERE-QUIROZ,

Defendant.

Case No. 2:16–cr–93–GMN–VCF

**REPORT & RECOMMENDATION**

10

11

12

Before the court are Pere-Quiroz's motion to suppress (ECF No. 59), the Government's response

(ECF No. 65), and Pere-Quiroz's reply (ECF No. 67).  This court held an evidentiary hearing at 10:00

am on July 20, 2016.  For the reasons stated below, Pere-Quiroz's motion should be granted.

13

**I. Background**

14

15

16

17

18

19

In September 2015, Pere-Quiroz, along with co-Defendant Christina Tripp,[1] allegedly drove

from Ely to Henderson in order to purchase methamphetamine.  (ECF No. 65-1)  Unfortunately for the

Defendants, the seller was cooperating with law enforcement.  As Tripp approached the seller's vehicle,

she was arrested.  (*Id.*)  Pere-Quiroz immediately fled from their vehicle, but was arrested after a short

foot chase.  (*Id.*)

20

21

At a Henderson police station Pere-Quiroz was questioned by Nevada Department of Corrections

supervisor David Medua, FBI agent Josh Kip, Criminal Investigator Teresa Laurian.  (ECF No. 65)

22

23

24

25

---

[1] Tripp has pled guilty to one count of conspiracy to possess methamphetamine with intent to distribute.  (ECF No. 65)  She
does not join in this motion.

Pere-Quiroz was more comfortable speaking Spanish.[2]  Investigator Teresa Laurian translated.  Laurian

is employed by the Nevada Department of Corrections as a criminal investigator.  She has

approximately 7 years of experience with the Department and has worked in the sexual assault

investigations, internal affairs, and drug units.  She has performed over 100 translations for various law

enforcement agencies, but is not a certified translator for the Department.  At the evidentiary hearing,

Laurian confirmed the English translations of selected Spanish portions of the interview.  A transcript

and video recording of the interview were admitted into evidence.

During the interview, Laurian spoke to the officers in English and spoke to Pere-Quiroz in

Spanish.  Pere-Quiroz spoke Spanish at all relevant times.

> Kip: Ok we have Teresa here; the first thing that I am going to do is [go over] the advice of rights.  This is the one that we use, and if you can translate and maybe have him sign at the bottom.

> Laurian (to Pere-Quiroz): I am going to read the rights from the English copy, but we are going to make you sign, please.  This is the same but translated.

> Pere-Quiroz: [A]nd why I have to sign?

> Laurian: [Y]ou understand that we read your rights before we talked to you. Ok?  That it is the right to remain silent, you understand?

> Pere-Quiroz: Yes.  I don't have to talk if I don't want to.

> Laurian: you don't have to talk if you don't want, Ok?

> Pere-Quiroz: I don't want to talk.

> Laurian: [Y]ou don't want to talk? Ok.

> Laurian (to Kip): That's it.  He invoked.[3]

---

[2] At the hearing this court noted that Pere-Quiroz understands English fairly well and during the interview Pere-Quiroz responded to one of Kip's English questions in Spanish.

[3] The transcript filed with the Government's response to the motion to compel (ECF No. 65-3) unhelpfully omitted the phrase: "He invoked."  In order to obtain accurate interview dialogue, this court reviewed a video recording of Pere-Quiroz's interrogation.  (ECF No. 66)

Kip: Ok. Ok. We were hoping to try and talk to you about some stuff.  You don't want to talk?[4]

Pere-Quiroz: I don't know what's going on.  I don't know what it is happening.

Laurian (to Pere-Quiroz): We cannot talk to you unless you give us the right to talk to you.

Kip (to Laurian): Explain to him that he was a passenger in that vehicle coming up here. And we want to know why he was in that vehicle. But again if he doesn't want to talk to us, we have to stop according to the law. We'd like him to tell his side of the story.[5]

Laurian (to Pere-Quiroz): We understand that you went for a ride and what we want to do it is to understand why you were with her now and why you were coming today?  But if you don't have us the right to talk to you, by law we can't talk to you.

Pere-Quiroz: [O]k, well yes.  I can tell you why I was coming, but just that.  I do not know anything else.

(ECF No. 65-3)

Pere-Quiroz then signed a *Miranda* waiver form, and proceeded to make incriminating

statements.  (*Id.*)  He now move to suppress those statements because they were allegedly obtained after

he had invoked his *Miranda* right to silence.  (ECF No. 65)

## II. Discussion

In order to safeguard the right against self-incrimination, the police must inform a suspect of

certain rights before beginning a custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 460, 86

S.Ct. 1602, 1620 (1966).

In now familiar words, the defendant must be advised of that:

he has [1] the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that is he

---

[4] The interview transcript only states that "Officer Speaks in English."  The absence of a verbatim transcription, this court relies on the video recording of the interview and Investigator Laurian's testimony.

[5] The interview transcript only states that "Officer Speaks in English."  The absence of a verbatim transcription, this court relies on the video recording of the interview and Investigator Laurian's testimony.

1    cannot afford an attorney one will be appointed for him prior to any questioning if he so
desires.

2
3    *Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S.Ct. 2875, 2880, 106 L.Ed.2d. 166 (1984) (citing

*Miranda v. Arizona*, 384 U.S. 346 (1966)).

4
5    1.    Agent Kip Continued to Impermissibly Interrogate Pere-Quiroz After He Invoked His Right to

Remain Silent

6
7        i.    *Pere-Quiroz Unambiguously Invoked his Right to Remain Silent*

8    Once a defendant unambiguously invokes his right to remain silent, all interrogation must cease.

9    *Miranda*, 384 U.S. at 473-74, 86 S.Ct. at 1627.   Pere-Quiroz statement, "I don't want to talk," can only

10   be interpreted as an unambiguous invocation of his right to remain silent.  His words did not contain the

11   equivocation, indecision, or uncertainty that would have rendered his request ambiguous.  *See Davis v.*

12   *United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Maybe I should talk to a

13   lawyer" was an ambiguous request for counsel); see *also United States v. Rodriguez*, 518 F.3d 1072,

14   1076-77 (9th Cir. 2008) ("I'm good for tonight" was an ambiguous invocation of the right to remain

15   silent).

16       The Government argues that the agent's subsequent questions were intended to clarify Pere-

17   Quiroz's ambiguous statement.  *Rodriguez*, 518 F.3d at 1079 (holding that police officers had a duty to

18   clarify ambiguous invocations made before a waiver of *Miranda* rights).  The officer's duty to clarify

19   however is only triggered when the defendant has made an ambiguous request to remain silent.  *See id.*

20   As discussed above, the Government's argument incorrectly asserts that Pere-Quiroz's statement, "I

21   don't want to talk" is an ambiguous invocation of the right to remain silent.

22
23       After Pere-Quiroz stated that he did not wish to talk to the officers, Kip asked him: "[y]ou don't

24   want to talk?".   In light of Pere-Quiroz's unambiguous statement, Kip's question was inappropriate.  It

25

is an attempt to get Pere-Quiroz to change his mind rather than an effort to clarify Pere-Quiroz's previous unambiguous statement.[6] *See Michigan v. Moseley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d. 313 (1975) (questioning after a *Miranda* right has been invoked, "operates on the individual to overcome free choice in producing a statement").   On cross-examination at the evidentiary hearing, Investigator Laurian conceded that, but for Agent Kip's request that she explain the situation to Pere-Quiroz, she would have terminated the interview.

<ul style="list-style:none">
<li>ii.   <em>Agent Kip Continued to Interrogate Pere-Quiroz After He Invoked His Right to Remain Silent</em></li>
</ul>

<ul style="list-style:none">
<li>a.   <u>Kip's Questions Constituted an Interrogation</u></li>
</ul>

"Interrogation is defined not only as express questioning but its 'functional equivalent.'" *United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994).  "The functional equivalent of interrogation includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.'" *Id.*  While the focus of this inquiry is on the defendant's perceptions, "the police are not held accountable for the unforeseeable results of their words or actions." *Id.*

In *Moreno-Flores*, Border Patrol agents arrested the defendant with 600 lbs. of cocaine near the U.S.-Mexico border. *Id.* at 1166.  While the agents were transporting the defendant to a detention center, they mentioned that they had found the cocaine in the defendant's car and that the defendant was in "serious trouble." *Id.*  The following day the defendant made incriminating statements about the

---

[6] Even assuming that Kip were permitted to ask Pere-Quiroz a clarifying question, Pere-Quiroz responded: "I don't know what's going on.  I don't know what it is happening." (ECF No. 65-3)  This response, which should not have been elicited, cannot be used to create ambiguity where none existed before. *Anderson v. Terhune*, 516 F.3d 781, 791 (9th Cir. 2008).

cocaine. *Id.* On appeal, the Ninth Circuit held that the agents' statements about the cocaine did not amount to an interrogation. *Id.* Therefore the defendant's statements were admissible. *Id.*

Unlike the agents in *Moreno-Flores*, Kip asked Pere-Quiroz a pair of direct questions: (1) why he was in a car with Tripp and (2) why he had traveled from Ely to Henderson. This was an interrogation.

The Government argues that Kip did not begin to interrogate Pere-Quiroz until after Pere-Quiroz had signed a *Miranda* waiver form. (ECF No. 65)  The Government's argument however mischaracterizes Kip's statements. Kip asked Laurain to tell Pere-Quiroz, "we want to know why he was in that vehicle." (ECF No. 65-3)  Laurian then translates "what we want to do is to understand why you were with her and why you were coming [to Henderson] today?" (*Id.*)  Kip and Laurian's words are not an explanation of the situation, *Moreno-Flores*, 33 F.3d at 1169, and they were not idle chatter between the two officers. *Rhode Island v. Innis*, 446 U.S. 291, 294, 100 S.Ct. 1682, 1686-87, 64 L.Ed.2d 297 (1980).  Their words were express questions directed at Pere-Quiroz with the intent of finding out more about his involvement with Tripp and the drug transaction.

b.      <u>Pere-Quiroz's Right to Remain Silent was Not Scrupulously</u><br><u>Honored</u>

A defendant's invocation of his right to remain silent does not preclude the police from all further questioning. *Moseley*, 423 U.S. at 96. The police may reinitiate questioning so long as the defendant's right to remain silent was "scrupulously honored." *See id.* at 104-07, 96, S.Ct. at 326-328 (holding that the right to remain silent implicitly confers the "right to cut off questioning").

When determining whether a defendant's right to remain silent was scrupulously honored, a court will inquire "into all of the relevant facts to determine whether the suspect's rights have been respected." *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988). Among the factors to be

considered are: (1) the amount of time between the interrogations; (2) the provision of fresh *Miranda* warnings before the second interrogation; (3) the scope of the second interrogation; and (4) "the zealousness of officers in pursuing questions after the suspect has asserted the right to silence." *Id.* This list was not exhaustive, and no one factor by itself is dispositive. *Id.*

Here, none of the enumerated *Hsu* factors weigh in favor of finding that Henderson police officers scrupulously honored Pere-Quiroz's right to remain silent. Kip resumed the interrogation immediately after Pere-Quiroz's invocation and the first and second sets of questions pertained to the same drug purchase. *See id.* Additionally the short interlude between the invocation and the resumption of questioning indicates that the officers were very eager to obtain Pere-Quiroz's statement despite the invocation of the right to silence. *See id.* Instead of scrupulously honoring Pere-Quiroz's right to remain silent, Kip obtained a waiver *Miranda* rights after Pere-Quiroz had unambiguously invoked his right to remain silent. These subsequent incriminating statements should therefore be suppressed.

2. <u>Pere-Quiroz Did Not Knowingly, Voluntarily, and Intelligently Waive His Right to Remain Silent</u>

Once a defendant has invoked his right to remain silent, all questioning must cease immediately, and "any subsequent statements by the defendant in response to continued interrogation cannot be used to find a wavier or cast ambiguity on the earlier invocation." *Anderson v. Terhune*, 516 F.3d 781, 791 (9th Cir. 2008). The Government argues that Pere-Quiroz knowingly, voluntarily, and intelligently waived his right to remain silent when he signed a *Miranda* waiver form. (ECF No. 65) The Government detailed how the officers explained to Pere-Quiroz his *Miranda* rights, in both Spanish and English, how the agent patiently answered clarifying questions, and how Pere-Quiroz ultimately signed a *Miranda* waiver form. (*Id.*)

The Government's argument ignores Pere-Quiroz's previous invocation of his right to silence, and the fact that the subsequent wavier was a product of continued questioning. *Anderson*, 516 F.3d at 781. When Pere-Quiroz stated that "[he didn't] want to talk" all interrogations should have ceased at that moment. *Miranda*, 384 U.S. at 473-74, 86 S.Ct. at 1627. Investigator Laurian, a trained law enforcement officer, conceded this fact at the evidentiary hearing. The Government cannot use Pere-Quiroz's post-invocation statements to cast ambiguity on his unambiguous invocation. *Anderson*, 516 F.3d at 781.

Similarly the Government cannot rely on Pere-Quiroz's eventual waiver of his Miranda rights. Had the officer scrupulously honored Pere-Quiroz's invocation of his right to remain silent, in all likelihood Pere-Quiroz would not have signed the *Miranda* waiver. Since Pere-Quiroz unambiguously invoked his right to remain silent and his *Miranda* waiver was ineffective, his incriminating statements should be suppressed.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Pere-Quiroz's motion to suppress (ECF No. 59) be GRANTED.

IT IS FURTHER RECOMMENDED that all statements after Laurian says "[h]e invoked" should be suppressed.

IT IS SO RECOMMENDED.

DATED this 21st day of July, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

8